**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**PERRY J. CUEVAS**                                                        **PLAINTIFF**

**VERSUS**                                **CIVIL ACTION NO. 1:07cv10-LG-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                             **DEFENDANT**

**REPORT AND RECOMMENDATION**

This cause comes before this Court on Plaintiff's Motion [11-1] to Remand, which is accompanied by Memorandum [12-1] in Support. Defendant filed a Response [14-1] in Opposition, which is also accompanied by a Memorandum [15-1] in Support and seeks affirmation of the Commissioner's decision. Additionally, Plaintiff filed a Rebuttal [16-1]. Having considered the Plaintiff's Motion[11-1], the Defendant's Response [14-1], the Plaintiff's Rebuttal [16-1], the record of proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [11-1] to Remand should be denied and the decision of the Commissioner should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

On March 11, 2005, Plaintiff Perry J. Cuevas ("Cuevas") filed a claim for Title II disability benefits. (Tr. 49). Cuevas alleged his disability began on September 9, 1999, due to a torn ACL in his left knee and arthritis. (Tr. 86). The State Agency, denied Cuevas' claim at the initial level of the administrative process. (Tr. 298). Cuevas sought, and received an administrative hearing before an Administrative Law Judge ("ALJ"), which was held on April 13, 2006. (Tr. 36, 39). At the request of the ALJ, a Vocational Expert ("VE") appeared and testified.[1] Cuevas, accompanied by

---

[1]Cuevas notes that although the ALJ took the testimony of the VE, the ALJ did not rely on the testimony in making his decision. However, the ALJ does reference the VE's

both his wife and attorney, George D. Ernest III, appeared and offered testimony.  At Cuevas' request, Cornelius E. Gorman, Ph.D., a rehabilitation consultant, also appeared and testified. (Tr. 235).  The ALJ denied Cuevas benefits by an administrative decision issued May 19, 2006. (Tr. 19).

Cuevas sought review by the Social Security Administration's Appeals Council. ("AC").  The AC upheld the ALJ's denial, making the ALJ's determination the "final" decision of the Commissioner. (Tr. 3).  Cuavas filed the instant Complaint [1-1] on January 8, 2007, seeking judicial review of the Commissioner's "final" decision.

## FACTS

Cuevas was 45 years of age as of the date of the administrative decision denying his claim for benefits under Title II of the Act. (Tr. 49, 216).  Cuevas completed eight years of formal education and his vocational history consists primarily of work experience as a structural repair welder, which is classified as medium work. (Tr. 87-88, 216, 233).  Cuevas satisfied the special statutory earnings requirement in regards to Title II benefits in September of 1999, the month in which the onset of disability is alleged. (Tr. 49, 80, 218).  Cuevas continues to satisfy the requirement through December 31, 2009.

The ALJ employed the five (5) step sequential evaluation process.  At step one (1) of the sequential evaluation process, the ALJ noted that Cuevas worked after the alleged onset date of September 9, 1999. (Tr. 19).  However, the ALJ made no determination as to when Cuevas last engaged in substantial gainful activity, because this determination could be made in a subsequent step. *Id*.  Cuevas worked until July 24, 2000, and thereafter engaged in self-employment until September 30, 2003. (Tr. 80).

---

classification that Cuevas' past work experience was classified as medium exertionally, which was beyond his determined RFC for no more than a full range of sedentary work.  Thus, Cuevas was unable to perform past relevant work. (Tr. 22).

At step two (2), the ALJ acknowledged the presence of a combination of pain producing impairments, which the ALJ categorized as severe. (Tr. 19). The ALJ noted that Cuevas possessed degenerative joint disease of the left knee with anterior cruciate ligament instability. *Id*. At step three (3) of the sequential evaluation process, the ALJ concluded that Cuevas' impairments did not meet or equal the entitlement requirements of the Commissioner's Listing of Impairments. *Id*.

At the fourth (4th) step of the sequential process, the ALJ concluded that Cuevas could not return to past relevant work. (Tr. 22). At the fifth (5th) step of the sequential process, the ALJ relied on the Medical-Vocational Guidelines to deny benefits. (Tr. 23).

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

Cuevas argues that the ALJ erred in relying exclusively on the Medical Vocational Guidelines, or "Grid Rules" because Cuevas suffers from non-exertional impairments and cannot perform a full range of sedentary work. *See* Plaintiff's Memorandum [12-1] pp. 4,7.  Citing *Scott v. Shalala*, 30 F. 3d 33, 34 (5th Cir. 1994), Cuevas argues that in order for the ALJ to make a finding of no disability, based on the Grids, the law requires that the "evidentiary underpinnings" of the guidelines "coincide exactly" with the record evidence of impairments.  Cuevas also cites *Newton v. Apfel,* 209 F. 3d 448, 458 (5th Cir. 2000), arguing that if the impairments do not fit exactly within the Grid Rule, the Grids cannot be used and the ALJ must resort to testimony of a VE.  Cuevas further points out that as corollary to this rule, the law is well established the Grids cannot be used if the claimant has non-exertional impairments. 20 CFR § 404.1569a(c)(2),(d); 20 CFR Pt 404, SubptP, App. 2 § 200.00(e)(1), (2); *Hernandez v. Heckler*, 704 F. 2d 857, 861 (5th Cir. 1983); SSR 96-9p.

Cuevas asserts that in the case at bar, he has well documented non-exertional impairments prohibiting the use of the guidelines. *See* Plaintiff's Memorandum [12-1] p. 5.  Cuevas points to Dr. Jackson, his treating orthopedic surgeon, who assigned restrictions of no kneeling, crawling, squatting, or ladder climbing.  Cuevas argues that these permanent restrictions were accepted as fact by the ALJ. (Tr. 21).  Cuevas further points out that he also suffers from swelling in his left knee, which he argues is yet another non-exertional limitation prohibiting application of the Grid Rules. At the hearing before the ALJ, Cuevas testified that his knee swells causing him to elevate his knee and apply ice.(Tr. 229-30).[2] Thus, Cuevas maintains that the existence of documented non-exertional limitations prohibited the ALJ from using the Grids. Cuevas further asserts that in addition to the

---

[2] Cuevas points out that the swelling of his knee is well documented in the medical records and is again entirely consistent with osteoarthritis and the effect of 7 knee surgeries. See e. g. (Tr. 135, ("fluid"), 136, 144, 148, 150, 184, 195-96, (MRI, "evidence of knee joint effusion"), 197- 98).

existence of non-exertional limitations, the law prohibits exclusive reliance on the Grids when a claimant can only perform something less than the full range of sedentary work. *See* Plaintiff's Memorandum [12-1] p.7.

The Defendant argues that in rendering a decision that Cuevas could perform a full range of sedentary work activity, the ALJ performed an extensive assessment of Cuevas' alleged impairments, his medical history and treatment, the reported clinical findings and medical opinions, as well as expressly evaluating Cuevas' subjective complaints of pain, alleged functional limitations, and other symptoms. (Tr. 17-23). The Defendant points out that nothing in Cuevas' treatment records indicate that his treating sources believed him to be totally incapable of all work activity. Cuevas' primary treating specialist, Dr. Jackson, determined that the permanent restrictions on Cuevas' work activities were light duty with no repetitive kneeling, crawling, squatting, lateral climbing, or walking on an incline or uneven surfaces and no repetitive stair climbing of more than 2 or 3 flights per day. (Tr. 160).

The Defendant recognizes that Dr. Jackson previously limited Cuevas to the performance of light duty with no kneeling, crawling, squatting, ladder climbing, or inclined walking (Tr. 162). However, the Defendant notes that these postural restrictions were dated April 9, 2002, and the limitations were contemporaneous with the revision procedure performed on Cuevas' left anterior cruciate ligament on December 17, 2001. (Tr. 164-165). Additionally, the record reflects that Dr. Jackson revised his assessment of Cuevas' postural capabilities upward by February 17, 2005. (Tr. 160). In April, 2005, Dr. Jeffcoat, a non-examining consultant physician for the Office of Disability Determination Services, determined that Cuevas' impairments resulted in identical postural limitations. (Tr. 206). The record reflects that the treatment records and progress notes from Cuevas' other treating and consulting specialists are devoid of any indication that he was permanently and

totally incapable of all work activity. (*See* Tr. 134-139, 142-145, 152-154, 157-159).

Defendant points out that only Dr. Jackson and Dr. Jeffcoat noted any exertional limitations on the part of Cuevas, and both physicians averred that Cuevas was restricted to no more than light exertional activity. (Tr. 162, 200). The ALJ was not obligated, nor did he solely adopt those assessments. Instead, the ALJ based his decision upon the consideration and analysis of entire record, and determined that Cuevas was limited to physical activity at the sedentary exertional level. (Tr. 18-22).

The Defendant submits, and the Court agrees, that the ALJ's residual functional capacity ("RFC") is not only consistent with the clinical findings of the treating and consulting physicians, as well as the assessment by the rehabilitation consultant, Cornelius E. Gorman, Ph.D. (Tr. 135-139, 144, 152-154, 157-158, 160, 161, 162, 199-206, 207-211, 236-237), but is also supported by Cuevas' own testimony regarding his abilities to lift, carry, sit, stand, and walk. (Tr. 221-226). The ALJ's decision makes clear, despite Cuevas' representations to the contrary, that Cuevas remained capable of performing the full range of physical activities at the sedentary level. (Tr. 17-23, 19-22 at Finding 5). Thus, the Court finds that substantial evidence supports the ALJ's determination that Cuevas was capable of performing the full range of sedentary work. (Tr. 19-22).

The Defendant is correct in asserting that although the burden of proving disability ultimately rests with Cuevas, the burden of production of evidence shifts to the Defendant when, as in the case at bar, a claimant can not return to past work. *See* Defendant's Memorandum [15-1] p. 9. This burden is met if the Defendant proves that there is "other substantial gainful employment available that the claimant is capable of performing." *Bowling*, 36 F.3d at 435; *see also Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

The ALJ determined that while Cuevas could not return to his past relevant work, he could

perform other work which existed in significant numbers in the local and national economies (Tr. 19-23, 22-23). Citing 20 C.F.R. Part 404, Subpart P, Appendix 2, Defendant asserts that the ALJ's conclusion regarding Cuevas' disability is further supported by the application of the Grid Rules. The Grid Rules are applicable in cases where the claimant is unable to perform past work due to his impairments, but retains the functional capacity to perform alternative work. The ALJ found that Cuevas possessed the RFC for the full range of sedentary work. Applying the Grid rules, the ALJ determined that Rules 201.25 and 201.19 of Table No. 1, Appendix 2 direct a conclusion of "not disabled." (Tr. 22-23).

As previously noted, Cuevas argues that the ALJ erred by exclusively relying on the Grid Rules. Defendant points out that the Grid Rules direct conclusions as to disability when the findings of fact coincide with all of the criteria of a particular rule. For example, in order for a rule in Table No. 1 to direct a determination of "not disabled," the individual must be able to perform the full range of work noticed by that rule. 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200.00; SSR 96-9p. Additionally, in order for a rule to direct a conclusion of "not disabled," an individual must not possess an impairment which restricts the non-exertional capabilities below those necessary to perform unskilled work at the sedentary level. *See* Appendix 2, *supra*, § 200.00(d). Thus, as in the case at bar, if an individual has a single, or a combination of impairments, which result in both strength limitations and non-exertional limitations, the rules in Appendix 2 are first considered in order to determine whether a finding of disabled is possible based on the strength limitations alone. If this finding can not be reached, then the rule which corresponds to the individual's Vocational Profile ("VP") and maximum RFC will be used in order to determine how the aggregate of the limitations and restrictions reduces the occupational base of administratively noticed unskilled jobs.

Should a certain additional exertional or non-exertional limitation have little effect on the

range of work remaining, then the unskilled occupational base is not significantly compromised and reliance upon the Grid Rules is appropriate. *Id.*; *see Hernandez v. Heckler*, 704 F.12d 857, 861-863 (5th Cir.1983).

The Defendant avers that contrary to Cuevas' contention, a neutral reading of the transcript from the administrative hearing reveals that Cuevas was not precluded from all crouching or stooping. Thus, the Defendant argues that Cuevas was not limited to less than the full range of sedentary work. *See* Defendant's Memorandum [15-1] p.11.  Defendant further asserts that in regards to Cuevas' postural capabilities, the record reflects that he was limited to work activity which did not involve repetitive crouching or stooping and that these limitations are not inconsistent with the abilities to perform the full range of sedentary work. (Tr. 160).[3] Dr. Jackson determined that Cuevas was only precluded from work activity which involved frequent or repetitive crouching and stooping.  Thus, the ALJ's determination that Cuevas was capable of performing the full range of unskilled sedentary occupations was correct and the ALJ properly relied upon the Grid Rules in order to establish the existence of alternative work. (Tr. 19-23).

In his Rebuttal Brief [16-1], Cuevas argues that the Defendant's argument that the ALJ's decision is supported by substantial evidence despite the ALJ repeatedly omitting the word "repetitive" from Cuevas' medical restrictions is without merit. *See* Rebuttal [16-1] p.1.  Cuevas argues that the ALJ's factual finding of no "kneeling, crawling, etc." was no mistake.  *Id*.  As noted previously, the record indicates that as of February 17, 2005, Cuevas' treating orthopedic specialist

---

[3] The Defendant argues and the Court concurs, that in this regard, he has provided clarification on the impact of non-exertional restrictions such as the postural limitations experienced by Cuevas.  A reading of SSR 96-9p and SSR 85-15 indicates that some stooping and crouching are required to do almost any kind of work. However, if a person can stoop or crouch occasionally, from very little up to one-third (1/3) of the time, the sedentary and light occupational base is virtually intact.

Dr. Jackson, stated that Cuevas could perform light work activity which did not require repetitive kneeling, crawling, squatting, lateral climbing, walking on an incline or uneven surfaces, or repetitive stair climbing of more than 2 or 3 flights per day. (Tr. 160).

Defendant points out that in light of the physician's unequivocal statement regarding Cuevas' postural capabilities, the basis for Cuevas' and the ALJ's omission of "repetitive" from their recitation of Dr. Jackson's assessment is not readily discernible. *See* Defendant's Memorandum [15-1] p. 8, footnote 6. Regardless, the Defendant argues, and the Court concurs, that the evidentiary record establishes that Dr. Jackson did not, as of his most recent and last assessment of Cuevas' RFC, find him to be incapable of all kneeling, crawling, squatting, or ladder climbing. (*See* Plaintiff's Memorandum [12-1] p. 5, Tr. 22, Tr. 160). Thus, the Court agrees with the Defendant's assertion that any such misstatement of that assessment by both Cuevas and the ALJ does not contradict the unambiguous opinion of the qualified attending medical specialist regarding his patient's functional capabilities. Thus, the Court is not persuaded by Cuevas' argument and does not find that this issue warrants remand. Further, this Court finds that the decision is supported by substantial evidence and should be affirmed.

## **CONCLUSION**

The court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and that the decision is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed. The Court further finds that Plaintiff's Motion [10-1] to Remand should be denied.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy

to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the  11th  day of February, 2008.

                                                        s/ JOHN M. ROPER
                                    CHIEF UNITED STATES MAGISTRATE JUDGE